# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| EDDIE M. WILLIAMS<br><br>v.<br><br>CVS CAREMARK CORPORATION, PENNSYLVANIA CVS PHARMACY, L.L.C., MARK STEPHANY, BEVERLY EICHMULLER, and JOHN MACNAIR | CIVIL ACTION<br><br>NO. 15-5773 |

## MEMORANDUM RE: PLAINTIFF'S MOTION TO COMPEL DISCOVERY AND FOR SANCTIONS

Baylson, J.                                                                                                                                                             August 18, 2016

## I.  INTRODUCTION

In this job discrimination suit, plaintiff Eddie M. Williams ("Mr. Williams" or "Plaintiff") moves to compel discovery and requests that this Court impose sanctions on defendants CVS Caremark Corporation, Pennsylvania CVS Pharmacy, L.L.C. ("CVS"), Mark Stephany, Beverly Eichmuller, and John MacNair (together with CVS, Mr. Stephany, and Ms. Eichmuller, the "Defendants") pursuant to Federal Rule of Civil Procedure ("Rule") 37.  For the following reasons, Mr. Williams' motion is denied.

## II.  RELEVANT FACTUAL & PROCEDURAL HISTORY

### A.    The Alleged Incident

Mr. Williams' lawsuit stems from an altercation that took place at CVS Store #2866. (Am. Compl., ECF 4).  Mr. Williams, a field representative for FGX International ("FGX"), services CVS stores in the Philadelphia area to service FGX eyeglass displays.  (Am. Compl. ¶ 20).  On March 25, 2015, Mr. Williams visited CVS Store #2866 to service the FGX eyeglass displays.  (Am. Compl. ¶ 22).  While there, Mr. Williams had a verbal altercation with defendant

1

Mr. Stephany, during which Mr. Stephany allegedly used a well-recognized pejorative to describe Mr. Williams.  (Am. Compl. ¶ 29).  Mr. Williams alleges that he tried, and was refused an opportunity, to file a formal grievance against Mr. Stephany, and was then removed from the store.  (Am. Compl. ¶¶ 35-40).

In their Answer to Mr. Williams' Amended Complaint, Defendants deny that Mr. Stephany called Mr. Williams any pejorative, but admit that CVS and Mr. MacNair "chose to keep Defendant Stephany separated from Plaintiff to avoid further incident between them, as Defendant Stephany had already denied making the alleged remark."  (Answer ¶ 37, ECF 8).  Defendants also admit that Mr. Williams was asked to leave the store on March 25, 2015 after he "acted in an aggressive and threatening manner toward MacNair."  (Answer ¶ 39).

**B.     Discovery Disputes Emerge**

In a letter dated March 26, 2015, Mr. Williams' counsel requested the preservation of videotapes from CVS Store #2866 taken on March 25, 2015 between 9:30 a.m. and 11:00 a.m.  (Unsworn Decl. of Patricia S. Coates Supp. Pl.'s Mot. Compel ("Coates Decl."), Ex. 1).  After litigation commenced,[1] Mr. Williams' counsel propounded document requests on Defendants, seeking, *inter alia*:

> 3.     Any and all surveillance, audiovisual tapes of the CVS Store 2866 stockroom on March 25, 2015 where an altercation between Plaintiff and Defendant, Mark Stephany took place.
>
> 4.     Any and all surveillance, audiovisual tapes of the CVS Store 2866 retail area on March 25, 2015 where an altercation between Plaintiff and Defendant, John Macnair took place.
>
> 5.     Any and all surveillance, audiovisual tapes of the CVS Store 2866 retail area on March 25, 2015 where discussions between Plaintiff and Defendant, Beverly Eichmuller, took place, including but not limited to where Plaintiff reported the incident

---

[1] Mr. Williams commenced this lawsuit by filing a Complaint on October 26, 2015.  (ECF 1).

>between himself and Defendant, Mark Stephany, and where Plaintiff was escorted out of the store.

>\* \* \*

>18. All audio, video or digital recordings that refer or relate in any way to the allegations set forth in Plaintiff's Complaint.

(Coates Decl., Ex. 3).

Included in its responsive disclosure dated March 24, 2016, Defendants provided Mr. Williams' counsel with "Documents bates-stamped CVS-WILLIAMS-0001 to CVS-WILLIAMS-0338. This includes a DVD with surveillance video from CVS Store #2866." (Coates Decl., Ex. 4).

Thereafter, Mr. Williams' counsel, in a letter dated April 8, 2016, sent defense counsel a "Deficiency Notice"[2] stating that Defendants' document production contained numerous deficiencies. (Pl.'s Apr. 8, 2016 Deficiency Notice, Decl. of Marcy A. Gilroy Supp. Defs.' Opp'n to Pl.'s Mot. Compel ("Gilroy Decl.") Ex. G, ECF 22). Specifically, Plaintiff's counsel claimed that a DVD Defendants' produced of CVS Store #2866, Bates Stamped CVS-WILLIAMS-0001, failed to provide all of the requested surveillance video. In response, defense counsel stated that CVS-WILLIAMS-0001 did, in fact, provide all of the requested footage. (Gilroy Decl., Ex. I). In addition, defense counsel indicated that Mr. Williams' Deficiency Notice did not seek previously requested material but rather made new discovery requests,[3] and that Defendants would nonetheless endeavor to obtain the newly requested video surveillance footage. (Id.).

On April 15, 2016, a settlement conference took place before Magistrate Judge David R. Strawbridge (ECF 19), but was not successful. That same day, after the settlement conference,

---

[2] The Federal Rules do not provide for such deficiency notices.
[3] The Court notes that a document attached to Plaintiff's Reply as Exhibit "4" indicates that CVS and Plaintiff's counsel "agreed [Plaintiff] was only looking for the surveillance *in the area where this alleged incident took place*," and not the surveillance footage for the entire store. (Pl.s' Reply, Ex. 4) (emphasis added).

Mr. Williams' counsel requested a copy of the surveillance video used by Defendants at the settlement conference, and again requested disclosure of the material sought in the April 8, 2016 Deficiency Notice. (Coates Decl., Ex. 7).

In response to Plaintiff's counsel's April 15, 2016 letter, defense counsel reiterated that "the disk containing CVS video surveillance submitted to the Court and the one produced to you in this case as CVS-WILLIAMS-0001 were copied from the same source material." (Coates Decl., Ex. 9). In a letter to Mr. Williams' counsel dated April 19, 2016, defense counsel relayed that they had complied with Mr. Williams' initial discovery requests regarding the surveillance video by providing CVS-WILLIAMS-0001. (Gilroy Decl., Ex. M). Nevertheless, Defendants' counsel had recently learned that there was more footage, which would be provided forthwith. (Id.). Finally, on April 21, 2016, Defendants sent, via Federal Express, that additional surveillance video, Bates Stamped CVS-WILLIAMS-1006. (Gilroy Decl., Ex. N).

On April 22, 2016, Mr. Williams' counsel filed the instant motion to compel discovery and for sanctions pursuant to Rule 37 ("Motion to Compel and for Rule 37 Sanctions" or "Motion"). (ECF 20). In support of Mr. Williams' motion, Plaintiff attached (a) nine (9) documents substantiating the above timeline, (b) a memorandum of law seeking to compel production of the "original" DVR unit or disk and seeking sanctions against Defendants, and (c) Plaintiff's counsel's unsworn declaration. (Id.). Defendants opposed Mr. Williams' Motion on May 6, 2016. ("Defs.' Opp'n", ECF 22). In support of Defendants' opposition, Defendants attached fifteen (15) documents evidencing the above timeline, (b) a memorandum of law in opposition, (c) the sworn declaration of defense counsel Marcy A. Gilroy, Esq., and (d) the sworn declarations of (i) two CVS employees, (ii) the President and CEO of ClickIt Inc., (iii) and two employees of Locke Lord LLP, attorneys for Defendants. (Id.). Mr. Williams replied in

further support of his Motion on May 12, 2016. ("Pl.'s Reply, ECF 24). In support of this reply, Plaintiff attached another memorandum of law and nine (9) exhibits, but no declarations, affidavits, or deposition testimony in support of his claims. (Id.).

**C.     Evidentiary Hearing regarding Mr. Williams' Spoliation Claims**

After telephone conference with counsel and this Court on May 19, 2016, the Court scheduled a hearing for May 23, 2016, at which Mr. Williams was to present evidence in support of his contention that Defendants had not produced all of the surveillance footage and engaged in spoliation. Although Plaintiff's contention about spoliation has been formally focused on the time-stamp on the video, what it is really at stake here is that Plaintiff claims the video itself has been altered or manufactured to show conduct on behalf of Plaintiff which Plaintiff asserts never took place. Specifically, the video shows Mr. Williams, in the CVS store, pulling his right arm back and inferentially, about to punch or attack the CVS employee with whom he was having a discussion. Mr. Williams, through his counsel's arguments, asserts that this never happened and that he took no such action as is portrayed on the videotape.

At the hearing before this Court on May 23, 2016, Mr. Williams was provided the opportunity to present evidence of Defendants' alleged spoliation. It became clear to the Court, via several discussions with Mr. Williams' counsel, that Plaintiff's issue with the video surveillance footage was one of authenticity, not deficient disclosure.[4] The following exchange is illustrative of this point:

> THE COURT:  Does Mr. Williams agree that [the events appearing on the video] took place any day?
>
> MS. COATES:  No. He does not –
>
> THE COURT:  Well, where did they get a picture of Mr. Williams pulling his right arm back?

---

[4]     See also Hr'g Tr. at 36:25-37:6.

       MS. COATES: I don't know. They actually cropped it in. Mr. Williams –

       THE COURT: Wait, wait. If they cropped it in, do you agree that's Mr. Williams in the video?

       MS. COATES: Yes, it is Mr. Williams in the video.

       THE COURT: All right, well, they have a picture of him pulling his right arm back. Did you see that?

       MS. COATES: Yes, I did, Your Honor.

       THE COURT: What's Mr. Williams's contention as to when that happened?

       MS. COATES: He's saying that never happened.

       THE COURT: Well, how did they get a picture of it?

       MS. COATES: He services the store. He services the store on a weekly basis. So they can use different video from different time and they –

       THE COURT: So you're saying that CVS –

       MS. COATES: – as if they did something.

       THE COURT: So your position is CVS manufactured this?

       MS. COATES: Yes, Your Honor, it was my position.

(Tr. of Hearing May 23, 2016 ("Hr'g Tr.") 20:19-21:18, ECF 33).

    After the hearing, the Court issued a scheduling order (the "May 23, 2016 Order") extending the discovery period sixty (60) days so that Mr. Williams could "take additional discovery from [D]efendants on the issue of the authenticity, doctoring, completeness, etc. of the videotapes produced by [D]efendants in this case." (May 23, 2016 Order, ECF 30). On June 14, 2016, more than three weeks after the Court's May 23, 2016 Order, Plaintiff's counsel requested documents and information related to the March 25, 2015 surveillance video. (ECF 31-1, Ex. B).

6

Via letter dated June 17, 2016, Plaintiff's counsel noticed a Rule 30(b)(6) deposition of a CVS corporate representative as to (a) CVS employee practices, policies and procedures; and (b) the "original recording" of the surveillance footage on March 25, 2015.  (ECF 31-1, Ex. C).  On June 24, 2016, CVS objected to Plaintiff's 30(b)(6) notice.  (ECF 31-1, Ex. D).  On July 1, 2016, CVS moved for a protective order.  (ECF 31).  On July 19, 2016, Defendants filed a Notice that their Motion for a Protective Order was being withdrawn, as Mr. Williams had withdrawn his Rule 30(b)(6) deposition request and all outstanding requests for documents and information in relation to that deposition.  (ECF 38).

Pursuant to the May 23, 2016 Order, Mr. Williams filed a supplemental memorandum in support of his Motion on July 22, 2016.  ("Pl.'s Suppl.", ECF 41).  Plaintiff's supplemental memorandum consisted of approximately two pages containing vague references to "additional evidence," but did *not* indicate the nature or kind of this alleged evidence.  (Id.).  Furthermore, Mr. Williams sought to delay resolution of these issues until trial—an argument that Plaintiff had not proposed until filing that supplemental memorandum.  (Id.).  Defendants filed their supplemental memorandum on July 29, 2016.  ("Defs.' Suppl.", ECF 42).  Defendants' supplemental memorandum opposed Mr. Williams' spoliation claims and requested that Mr. Williams' be sanctioned for unnecessarily and unreasonably multiplying proceedings.  (Id.). Last, Mr. Williams filed an unauthorized sur-reply supplemental memorandum on August 5, 2016.  (ECF 44).  Because this Court did not authorize this filing, it will not be considered by the Court in reaching its decision.[5]

---

[5]   Nevertheless, even were the Court to consider the filing for its substance, the Court recognizes that the filing itself raises new issues that could have been addressed in Plaintiff's Supplemental Memorandum. Specifically, the filing provides that *on July 15, 2016*, during the extended discovery deadline, Mr. Williams obtained the user manual for the video camera used in CVS Store #2866, and which states that "[v]ideo files in this area are not erased during automated cleanup." (ECF 44 at 3). However, this is not, as Mr. Williams argues, "conclusive evidence" of spoliation. See Brewer v. Quaker State Oil Refining Co., 72 F.3d 326, 334 (3d Cir. 1995) ("[I]t must appear that there has been an actual suppression or withholding of the evidence.  No unfavorable

### III.  DISCUSSION

Mr. Williams' motion requests both the disclosure of (allegedly) improperly withheld material, and the imposition of appropriate sanctions.  The Court takes each request in turn.

**A.      Motion to Compel Discovery**

Rule 37 of the Federal Rules of Civil Procedure governs motions to compel discovery, and provides the following:

> (a)  Motion for an Order Compelling Disclosure or Discovery
> (1)  In General.  On notice to other parties and all affected persons, a party may move for an order compelling disclosure or discovery . . . .

Fed. R. Civ. P. 37(a).

The scope of what type of discovery may be compelled under Rule 37 is defined, in turn, by Rule 26(b)(1), which defines relevant discoverable evidence.  Further, rulings regarding the proper scope of discovery, and the extent to which discovery may be compelled, are matters consigned to the court's discretion and judgment.  Thus, it has long been held that decisions regarding Rule 37 motions are "committed to the sound discretion of the district court."  DiGregorio v. First Rediscount Corp., 506 F.2d 781, 788 (3d Cir. 1974).  Similarly, issues relating to the scope of discovery permitted under Rule 26 also rest in the sound discretion of the court.  Wisniewski v. Johns-Manville Corp., 812 F.2d 81, 90 (3d Cir. 1987).  Accordingly, a court's decision regarding the conduct of discovery, and whether to compel disclosure of certain information, will be disturbed only upon an abuse of discretion.  Marroquin-Manriquez v. I.N.S., 699 F.2d 129, 134 (3d Cir. 1983).

---

inference arises when the circumstances indicate that the document or article in question has been lost or accidentally destroyed, or where the failure to produce it is otherwise properly accounted for.").  Here, Mr. Williams has not put forth *any* evidence that Defendants destroyed or improperly withheld the video surveillance footage.

Furthermore, by the timeline presented in Plaintiff's own supplemental memorandum, there was no reason why this information could not have been included in Plaintiff's July 22, 2016 submission.  This also supports the Court's order that Mr. Williams' counsel show cause as to why she should not be subject to sanctions under 28 U.S.C. § 1927, see infra Part III.C.

A party moving to compel discovery bears the initial burden of proving the relevance of the requested information. Morrison v. Philadelphia Hous. Auth., 203 F.R.D. 195, 196 (E.D. Pa. 2001). "Once that initial burden is met, 'the party resisting discovery has the burden to establish the lack of relevance by demonstrating that the requested discovery (1) does not come within the broad scope of relevance as defined under [Rule 26], or (2) is of such marginal relevance that the potential harm occasioned by discovery would outweigh the ordinary presumption in favor of broad disclosure.'" Cope v. Brosius, No. 12-2382, 2016 WL 539142, at *2 (M.D. Pa. Feb. 11, 2016) (quoting In re Urethane Antitrust Litig., 261 F.R.D. 570, 573 (D. Kan. 2009)).

Here, Mr. Williams sought disclosure of the "original" surveillance footage recorded on March 25, 2016 at CVS Store 2866, mainly because he believed that the time stamp on the video provided by Defendants indicated that the video had been altered. (Coates Decl. Exs. 5, 7; see also Gilroy Decl. Exs. F, H). In response to Mr. Williams' repeated requests for the DVR[6] units from which the footage was downloaded, Defendants explained to Mr. Williams "that the DVR units in CVS stores have limited storage capacity, and automatically overwrite within 30-90 days," and therefore the requested footage "has long since been overwritten on the hard drive of the DVR unit at Store #2866." (Gilroy Decl., Ex. K; accord Gilroy Decl., Ex. M).

In support of these contentions, Defendants provided the declaration of James J. Carey, President and Chief Executive Officer of ClickIt Inc., which provides its "SmartCamXi video management systems for loss prevention and security in [CVS] retail stores." (Decl. of James J. Carey Supp. Defs.' Opp'n to Pl.'s Mot. Compel ("Carey Decl.") ¶ 3). Mr. Carey's Declaration includes the following statements:

- "[M]ost SmartCamXi HVR systems utilized by CVS will overwrite themselves approximately every 90 days." (Carey Decl. ¶ 5).

---

[6]  Alternatively referred to as "HVR" units.

- "[W]hen video footage that has been downloaded to a portable storage device is viewed on an independent computer, the SmartCamXi Player software reads the operating system of the computer viewing the footage and converts the time shown on the SmartCamXi Player display to the local time that existed when the video was originally recorded. This feature cannot be disabled." (Carey Decl. ¶ 7).

- "[T]he proprietary format used to create the video files on SmartCamXi HVR systems also means that the *content* of the video files created by the system cannot be *altered* using any of the programs commonly marketed for the purpose of editing video files . . . . In the unlikely event that someone was able to modify the content of surveillance video created on a SmartCamXi HVR system, the file would not pass digital signature verification." (Carey Decl. ¶ 10).

- The proprietary software includes multiple preventative measures, including (a) "if someone attempted to modify the file name on a surveillance clip recorded on a SmartCamXi HVR, the SmartCamXi Player would no longer be able to play the video clip; and (b) "if a video file is tampered with in any way, the digital signature verification would display an error message stating 'One or more video files do not contain valid cryptographic signatures. Play anyway?" (Carey Decl. ¶¶ 11, 12).

- After reviewing the video files contained in CVS-WILLIAMS-0001 and CVS-WILLIAMS-1006, that "the video files have not been edited or otherwise altered and, in fact, were verified as authentic by their digital signatures." (Carey Decl. ¶ 13).

Defendants provided additional declarations explaining (1) the disks provided to Mr. Williams were downloaded from the same HVR unit as, and were therefore identical to, the disks used by Defendants at the settlement conference with Magistrate Judge Strawbridge,[7] and (2) the video software was performing time zone normalization, meaning that the different time stamps were due to the video files "adapt[ing] to the settings of the computer clock on which they are displayed."[8]

In addition, after the termination of the extended discovery deadline, Mr. Williams stated that he "obtained additional evidence during the extended discovery period which is relevant and could lead a reasonable trier of fact to conclude that there was tampering and spoliation at trial," but that he "was unable to obtain a forensic expert report or conduct a productive 30(b)(6)

---

[7] Decl. of Ofelia Amador-Mendez Supp. Defs.' Opp'n to Pl.'s Mot. Compel ("Mendez Decl.") ¶¶ 4-7; see also Decl. of Julie Monacelli Supp. Defs.' Opp'n to Pl.'s Mot. Compel ("Monacelli Decl.") ¶¶ 3-4.
[8] Decl of Gregory Netzke Supp. Defs.' Opp'n to Pl.'s Mot. Compel ("Netzke Decl.") ¶¶ 3-6, Exs. A-C.

deposition to prove same at this time in the absence of the original surveillance video." (Pl.'s Suppl. at 2).

In sum, Mr. Williams failed to provide any evidence—neither his own sworn statement nor that of any purported video expert[9]—in support of his allegations of tampering and spoliation. Mr. Williams' submissions fall far short of what is required to compel the discovery he seeks. Therefore, the Court denies Mr. Williams' motion to compel.

**B.     Assessment of Costs against Mr. Williams**

"Our basic point of reference when considering the award of attorney's fees is the bedrock principle known as the American Rule: Each litigant pays his own attorney's fees, win or lose, unless a statute or contract provides otherwise." Baker Botts L.L.P. v. ASARCO LLC, 135 S. Ct. 2158, 2164 (2015) (quoting Hardt v. Reliance Standard Life Ins. Co., 560 U.S. 242, 252-53 (2010)). However, numerous exceptions to this rule have been established, such as various fee-shifting provisions by statutes or in the Federal Rules of Civil Procedure. Mr. Williams argues that this Court should impose sanctions because Defendants' discovery conduct violated Rule 26(a) and warrants an assessment of sanctions for discovery abuses under Rule 37(c)(1). (Def.'s Br. at 11). Defendants counter that it is Mr. Williams, not Defendants, who should pay costs and attorneys' fees associated with defending Plaintiff's Motion to Compel and for Sanctions. The Court finds that Defendants have the better argument. Accordingly, Mr. Williams and/or his counsel must pay Defendants' reasonable attorneys' fees and costs associated with defending against Mr. Williams' Motion.[10]

---

[9]     At the hearing before this Court on May 23, 2016, Mr. Williams provided that he approached a computer expert who "indicate[d] that he would have to see the hard drive and things like that in order to even determine" whether the footage had been altered. (Hr'g Tr. 38:12-13). That proposition was substantiated with neither documentation nor testimony.

[10]    This includes costs expended during the extended discovery period, permitted by the Court's May 23, 2016 Order, because the purpose of the extended discovery period was for Plaintiff to further substantiate his Motion to Compel and for Sanctions.

Under Rule 37(a)(5)(B), when the Court denies a motion to compel, the Court must order the moving party to pay the reasonable expenses incurred by the party opposing the motion, unless the Court finds the motion to be substantially justified. Fed. R. Civ. P. 37(a)(5)(B). "Substantial justification' requires 'justification to a degree that could satisfy a reasonable person that parties could differ as to whether the party was required to comply with the disclosure request. The proponent's position must have a reasonable basis in law and fact. The test is satisfied if there exists a genuine dispute concerning compliance.'" Fitz, Inc. v. Ralph Wilson Plastics Co., 174 F.R.D. 587, 591 (D.N.J. 1997) (quoting Nguyen v. IBP, Inc., 162 F.R.D. 675, 680 (D. Kan. 1995)). And, as the Supreme Court has recently explained in a related context, a party is entitled to the "costs that [the party] would not have incurred but for" the attorney's conduct; the "dispositive question is . . . whether the costs would have been incurred in the absence" of the unjustified conduct. Fox v. Vice, 563 U.S. 826, 838 (2011).

Here, the Court has denied Mr. Williams' motion to compel, and so the remaining issue is whether his motion was substantially justified. This Court finds that Mr. Williams' contention that Defendants' videotape was altered or manufactured, is without any factual or legal basis. The Court is compelled to this conclusion for a myriad of reasons, all of which were outlined in its denial of Mr. Williams' motion to compel, *supra*. Specifically, Mr. Williams' request for the "original" surveillance footage was based on a completely unsubstantiated assertion that the disclosed footage had been altered or otherwise edited. The Court indicated at the May 23 hearing that Mr. Williams' argument went to the authenticity of the surveillance video (Hr'g Tr. 20:15-17, 20:24-23:2). Mr. Williams' conclusory assertion, after a 60-day extension of the discovery period, that he "has obtained additional evidence during the extended discovery period which is relevant and could lead a reasonable trier of fact to conclude that there was tampering

12

and spoliation at trial" (Pl.'s Suppl. at 2), without including a description of, or statement adducing, such evidence, does nothing to change the Court's assessment.

Accordingly, Mr. Williams' Motion to Compel and for Rule 37 Sanctions did not have a reasonable basis in law and fact, and was therefore not substantially justified. Defendants will be given the opportunity to submit an affidavit of attorney's fees and costs to support the award of reasonable costs, and Mr. Williams and his attorney will have the opportunity to respond to the specific requests made therein.[11]

### C. Mr. Williams' Spoliation Accusations

Finally, the Court believes that Mr. Williams' counsel's repeated assertions of Defendants' alleged spoliation deserves sanctions. Spoliation is a very serious offense under any judicial system, and is specifically sanctionable under established case precedent. <u>Poulis v. State Farm & Cas. Co.</u>, 747 F.2d 863 (3d Cir. 1984). The accusation of spoliation is also serious, and if unfounded should be withdrawn. However, if the accusation has caused the disclosing party, whether plaintiff or defendant, expenses (such as attorney's fees), the Court may be warranted in imposing those sanctions under 28 U.S.C. § 1927 because the conduct of the attorney delayed and made the proceedings more expensive of the other party.

Section 1927 states, in pertinent part, that "[a]ny attorney . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." 28 U.S.C. § 1927. The principal purpose of § 1927 is "the deterrence of intentional and unnecessary delay in the proceedings. <u>Zuk v. East. Pa. Psychiatric Inst. Of the Med. Coll. Of</u>

---

[11] "[O]nce a district court determines that a fee award is warranted, our Circuit's well-established burden-shifting framework requires the moving party to show the reasonableness of fees and costs requested under the relevant statute by providing evidence to support the hours worked and rates claims. Then, the opposing party may challenge the reasonableness of the amount requested through affidavits and other evidence." <u>Barley v. Fox Chase Cancer Ctr.</u>, 54 F. Supp. 3d 396, 399 (E.D. Pa. 2014).

Pa., 103 F.3d 294, 297 (3d Cir. 1996) (quoting Beatrice Foods v. New England Printing, 899 F.2d 1171, 1177 (Fed. Cir. 1990)). Accordingly, the imposition of sanctions is reserved for "instances of serious and studied disregard for the orderly process of justice." Ford v. Temple Hosp., 790 F.2d 342, 346-47 (3d Cir. 1986) (quoting Overnite Trans. Co. v. Chicago Ind. Tire Co., 697 F.2d 789, 795 (7th Cir. 1983)).

The Third Circuit has held that a "high standard" guards the imposition of sanctions pursuant to § 1927 to ensure "that the provision in no way will dampen the legitimate zeal of an attorney in representing his client." Baker Indus., Inc. v. Cerberus Ltd., 764 F.2d 204, 216 n.4 (3d Cir. 1984). As such, a finding of bad faith is a prerequisite to an award under § 1927. In re Orthopedic Bone Screw Prods., 193 F.3d 781, 795 (3d Cir. 1999) (stating § 1927 applies only to conduct of "an egregious nature, stamped by bad faith that is violative of recognized standards in the conduct of litigation."). The imposition of sanctions under § 1927 required finding that the offending attorney (1) acted in bad faith or through intentional misconduct; (2) to multiply the proceedings; (3) through conduct that can be characterized as unreasonable and vexatious; and (4) which resulted in an increase in the cost of the proceedings. Trauma Serv. Grp., P.C. v. Hunter, MacLean, Exley & Dunn, P.C., No. 99-5979, 2000 WL 764911, at *2 (E.D. Pa. June 12, 2000).

The Court believes that § 1927 applies to Mr. Williams' counsel's conduct. Here, the precise issue revolves around the DVD surveillance video made for CVS Store #2866. The video, which was viewed in Court at the May 23, 2016 Hearing, depicts an individual, undisputedly Mr. Williams, in a discussion with an individual subsequently identified as a CVS store manager/employee. The video also clearly shows Mr. Williams pulling his arm back as if he is about to "punch" or otherwise assault the employee. The Court does not necessarily find

that this act was tortious.  Nor does the Court find that this act necessarily deprives Mr. Williams of the validity of his claims in this action.  The issue is whether the video is accurate.  Plaintiff's counsel has vigorously asserted from the beginning that the video is inaccurate and that it was manufactured by CVS.  (Hr'g Tr. 20:19-21:18).  But, though the Court gave ample opportunity, Mr. Williams has not presented any affidavits, declarations, or other evidence to support his very serious accusation.  The most Mr. Williams has done is argue that the mere fact there is a different time stamp on the video player for his, as opposed to Defendants', footage demonstrates that Defendants have engaged in spoliation.  This is plainly insufficient.[12]

The different in the time stamp can relate specifically to the time clock on the computer on which the video is being played, and does not necessarily imply that the video was not taken on the time stated on the CVS store records, which have been produced to Mr. Williams.  This fact has been amply supported by Defendants, specifically in the Declaration of Mr. Carey, President and CEO of ClickIt Inc.  (Carey Decl. ¶¶ 7-8; see also Netzke Decl. ¶¶ 4-6).  In addition, Defendants submissions have further supported the authenticity of the surveillance footage by demonstrating that the video files in question "have not been edited or otherwise altered and, in fact, were verified as authentic by their digital signatures."  (Carey Decl. ¶ 13).

Given the seriousness of Mr. Williams' accusation and his complete lack of evidentiary support, even after a sixty (60) day extension of the discovery deadline, this Court will require Mr. Williams' counsel to show cause why she should not be sanctioned under § 1927.

### IV.  CONCLUSION

---

[12]  "The burden of proof on a spoliation claim lies with the party asserting that spoliation of evidence has taken place."  Clientron Corp. v. Devon IT, Inc., 310 F.R.D. 262, 268 (E.D. Pa. 2015) (Baylson, J.).  Because Mr. Williams has failed to supply *any* evidence in support of his claims, the Court finds that he has failed to meet this burden.

For the foregoing reasons, Mr. Williams' Motion to Compel and for Rule 37 Sanctions is denied. Accordingly, Defendants shall file with the Court, by August 31, 2016, an Affidavit of Costs and Fees based on the foregoing Opinion. Within fourteen (14) days, Plaintiff shall file a response and shall show cause why she should not be sanctioned under § 1927 for unreasonably and vexatiously multiplying proceedings.

An appropriate Order follows.

O:\CIVIL 15\15-5773 williams v cvs\Memo re Motion to Compel and for Discovery Sanctions.docx